IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. EVANS, | No. 2:13-CV-1396-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 3, 2010.  In the application, plaintiff claims that disability began on January 1, 2008.  Plaintiff claims that disability is caused by "personality problems."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 2, 2012, before Administrative Law Judge ("ALJ") Carol A. Eckersen.   In an April 18, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): Asperger's disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the full range of work at all exertional levels with the following non-exertional limitations: the claimant is capable of performing simple repetitive tasks in a non-public setting; he cannot interact with co-workers and would function best in an independent separate work area; he may occasionally interact with supervisors; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on May 15, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues that the ALJ erred by considering his ability to sustain work-related activities given his mental impairment.  Citing Gatliff v. Commissioner of Social Security, 172 F.3d 690, 694 (9th Cir. 1999), plaintiff argues that "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time."  In making this argument, plaintiff challenges the ALJ's analysis of the opinions of Drs. White, McClure, and Kemp.  He also argues that the ALJ erred in rejecting his own testimony as only partially credible.  Finally, plaintiff argues that the ALJ failed to provide sufficient reasons for giving lay witness testimony from his father, Jim Evans, only partial weight.

/ / /

/ / /

/ / /

/ / /

### A.     Evaluation of the Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

4

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 1. Dr. White

As to Dr. White, the ALJ stated:

> On November 30, 2010, consultative psychologist, Miles White, Psy.D., examined the claimant.  No medical records were provided for his review.  The claimant reported that his only problem is his inability to effectively relate interpersonally with others.  Furthermore, he maintained that this has adversely affected his ability to obtain and maintain employment ever since he was old enough to work.  The claimant admitted that he has had this problem "ever since [he] can remember."  He has had ongoing problems getting along with his peers and authority figures throughout his life.  The claimant said he has not had any psychiatric treatment.
>
> Dr. White noted that the claimant reported and presented no difficulty in his ability to concentrate and focus attention.  He has mild difficulty in making decisions, which Dr. White noted was consistent with his presentation.  He performs household tasks with supervision from his father with whom he lives.  Dr. White states that on a daily basis the claimant presents as having moderate restrictions in his psychological ability to function independently.
>
> On mental status examination, Dr. White noted that the claimant was casually dressed and appeared significantly younger than his stated age.  He was generally able to volunteer information with direct and structured questioning.  He exhibited no psychomotor agitation or retardation.  He appeared genuine and truthful.  Regarding the claimant's thought processes, Dr. White stated the claimant presented as cognitively challenged at times but was generally coherent and organized.  The claimant exhibited no tangentiality or loosening of associations.  The claimant's thought content was relevant and non-delusional.  There was no expression of bizarre or psychotic thought content.  There was no presentation of suicidal, homicidal, or paranoid ideation during the interview.  The claimant denied recent auditory or visual hallucinations.  The claimant did not appear to be responding to internal stimuli during the interview.
>
> Dr. White indicated that the claimant's general presentation was "rather odd and atypical" however his mood was projected as calm and stable.  His affect was full-range and congruent with his thought and conversational content.  The claimant denied experiencing current feelings of depression or having feelings of hopelessness, helplessness, and worthlessness.  He also denied any current suicidal ideation, plan, or intent.  His speech was generally clear, linear, and normally articulated.  There was no evidence of stammering, dysarthria, neologisms,

> tangentiality, circumstantiality, or loosened, unusual, or blocked associations.
>
> * * *
>
> Dr. White diagnosed the claimant with relational problems not otherwise specified. . . Functionally, Dr. White opined the claimant is unrestricted in his ability to understand, remember, and carry out simple one or two-step job instructions. His ability to comprehend and follow detailed and complex instructions is moderately restricted. His ability to relate and interact with co-workers and public is severely impaired. His ability to maintain concentration and attention, persistence and pace is moderately restricted, as is his ability to associate with day-to-day work activity, including attendance and safety. He is moderately restricted in his ability to accept instructions from supervisors. Dr. White opined that though the claimant was on time for his scheduled appointment, he did present mild restrictions in his ability to maintain regular attendance in the work place and perform work activities on a consistent basis. His ability to perform work activities without special or additional supervision is moderately impaired and is consistent with his activities of daily living. (Ex. 3F). This opinion is well supported by the medical evidence and consistent with other substantial evidence in the record. . . . Accordingly, I assign great weight to this opinion.

According to plaintiff, the ALJ erred because "Dr. White's opinion when read in totality does not describe an individual who can sustain work activity as is evidenced by Mr. Evans' work record." Plaintiff asks rhetorically: "How does one have limited almost no contact with a supervisor when he needs additional supervision to perform the work?"

The court finds no error. The ALJ assigned great weight to Dr. White's opinion, as evidenced by the numerous non-exertional restrictions included in the residual functional capacity assessment which adequately captured the doctor's opinion that plaintiff is severely limited in his ability to interact with co-workers and the public. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (concluding that a limitation to simple tasks properly encapsulated a claimant's mental limitation, including limitations on pace and concentration). Further, contrary to plaintiff's characterization, Dr. White's limitations do not necessarily describe someone who is totally disabled. Specifically, the doctor noted no other marked limitations and found that plaintiff's ability to perform simple job tasks is unrestricted.

/ / /

        2.    <u>Dr. McClure</u>

As to Dr. McClure, the ALJ stated:

> Medical records are scant. He presented to care at Shasta Community Health Center on August 16, 2010, reporting that he was unemployed for two and half years living on food stamps and that he was now applying for disability and general assistance. He said he was unable to find a job. He denied physical or mental disability. Dr. Jill McClure, the examining physician noted no physical or mental impairment that makes him incapable of work or training. She indicated she would fill out a form to assist the claimant with identifying and seeking work/training. On October 6, 2010, he reported to Dr. McClure that he cannot understand people and they cannot understand him. Again he denied any other medical problems. He appeared in no apparent distress, and his physical examination was within normal limits. Dr. McClure noted he had an "odd affect." She noted the claimant was slow to answer her questions and indicated she would refer him to determine an underlying reason for his inability to answer questions as a normal rate. In reviewing the record, substantial persuasive weight is to be accorded to the claimant's treating physician, since it is presumed that she would have the best available knowledge of the claimant's impairments and would be in the best position to determine the degree to which these impairments would hamper the claimant in the performance of job-related tasks and duties. . . . Accordingly, I assign substantial weight to Dr. McClure's opinion.

Plaintiff appears to argue that the ALJ erred by failing to account for Dr. McClure's statement that "the most startling observation is his lack of insight and judgment and qualitative impairment in social interaction."

        Again, the court finds no error. As with Dr. White, the ALJ's residual functional capacity assessment, which included significant limitations on contact with the public, co-workers, and supervisors, adequately captured Dr. McClure's assessment regarding impairment in social functioning. <u>See id.</u> Similarly, the ALJ's limitation to simple repetitive work accounts for Dr. McClure's opinion that plaintiff lacks insight and judgment.

        3.    <u>Dr. Kemp</u>

As to Dr. Kemp, the ALJ stated:

> The claimant was referred to clinical psychologist Anita Kemp, Ph.D., at the Department of Rehabilitation. She administered a comprehensive mental evaluation and two psychometric tests including the Wechsler Adult Intelligence Scale IV (WAIS) and the Wide Range Achievement Test IV. During the interview, the claimant reported that someone at the

> Shasta Clinic told him he might have Asperger's. On mental status examination, Dr. Kemp noted he was cooperative and his speech was oriented, that his concentration was in the average range, as was his fund of information. His intelligence was in the low average range. His judgment and insight were noted to be poor. She noted his job history indicates that he does not know appropriate behaviors at work and does not see the need to abide by the rules.
>
> * * *
>
> Dr. Kemp diagnosed the claimant with schizoid personality disorder, rule out anti-personality disorder. She assessed the claimant's GAF score as 60, which indicates moderate symptoms. She noted the achievement test noted no learning disability and a clear strength in math. He functions in the average to low average range. She opined from a rehabilitation standpoint that he should have a job coach to advise him on appropriate work behavior. She noted he has little concern for social standards and crosses over appropriate boundaries in the work place. He does not take responsibility for his problems and tends to blame others. He had little connection or even interest in social relationships.
>
> Additionally, she noted that he expressed interest in going back to washing cars. He stated that this is easy and he knows what to do. It would work for him "as long as people don't talk to me." Then he added that he has worked with a lot of "idiots." He thought he could also push carts at Home Depot. The problem with these plans is that they are below his capabilities and this could result in his working with people he considers to be below him. Alternatives should be explored with him. Clearly he would do best in minimal interpersonal interaction type jobs. A classroom training would not be advised since he has not benefitted from this in the past. A position with hands-on training would be best. (Ex. 9F). This opinion is well supported by the medical evidence and consistent with other substantial evidence in the record. . . . Accordingly, I assign great weight to this opinion.

Plaintiff argues that the ALJ failed to properly take into account Dr. Kemp's recommendation for a job coach, as well as her opinion that plaintiff has little connection or interest in social relationships.

As with Drs. White and McClure, the court finds no error. Dr. Kemp's opinion that plaintiff has little or no interest in social relationships is well accounted for in the ALJ's finding that plaintiff should work in isolation. Dr. Kemp specifically stated that plaintiff could work in jobs with minimal interpersonal interaction.

///

1          Turning to Dr. Kemp's comments regarding a job coach, plaintiff
2  mischaracterizes the doctor's recommendation as a limitation given that the doctor stated only
3  that plaintiff "should," as opposed to "must," have a job coach.  Moreover, the job coach
4  recommendation was for the purpose of allowing plaintiff to learn to display appropriate social
5  behavior at work.  Such ability, however, would not be required for isolated non-public jobs,
6  which Dr. Kemp concluded plaintiff could perform.

### B.     Plaintiff's Credibility

          The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

          If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to the plaintiff's testimony and credibility, the ALJ stated:

> Upon filing for disability, the claimant alleged he was unable to work due to "personality problems." (Ex. 2E). On appeal, he alleged no worsening of his condition, however he stated his condition affects his ability to function in public as he is quiet and constantly nervous. He said grocery shopping and errands are difficult for him. He sometimes does not leave his home for days. He enrolled in college but failed almost every course. He has no friends and spends his day playing video games. He attempted to work dozens of times and was fired from every job due to personality issues, i.e., "being odd" and/or failing to follow directions. (Ex. 7E).
>
> In a Function Report the claimant prepared on October 5, 2010, the claimant said he spends his day eating meals, looking for work, and hanging out. He stated that he prepared his own meals daily and he does household chores. He goes outside daily and when asked if he can go out alone, he reported that he always goes out alone. He goes grocery shopping. He can handle checking and savings accounts and can count change. His hobbies include going to the library and going to stores. He does these things daily. He does not spend time with others. He has difficulty getting along with family. He stated his condition affects his ability to understand, concentrate, get along with others, and to talk, i.e., he said he does not understand people and people do not understand him. He tries to work "real hard" but people get angry with him. He can walk five miles before requiring a rest. He finishes tasks that he starts. He said he follows written and spoken instructions well but people tell him he does not. He has been fired from every job he has held. He does not like changes in routines. (Ex. 5E).
>
> At the hearing, the claimant testified that he attended Shasta Community College for approximately five years. He studied general accounting but failed most of his classes. He went to Harding University in Arkansas and studied the same subject and passed some classes and failed others.

///

///

> Regarding his work history, the claimant reported he worked as a bookkeeper for five hours a day five days per week through SMART program, a privately funded organization that helps youths obtain employment.  He stocked shelves at a retail store for a year and a half on a part time basis and was fired after sending an inappropriate email.  He worked as a lot attendant at a car lot rinsing dust from cars.  He was fired from this job.  He currently works for the Opportunity Center washing cars, doing janitorial work, and shredding and baling paper.  He was told he works too slowly.  He does not like the people he works with and does not get along with them.  He tries to work despite them, but his boss told him he should practice talking to others in the workplace.  He has been fired for talking back to his bosses.
>
> Regarding activities of daily living, he testified he lives with his father.  They take turns cooking and he will clean the bathroom if his father asks him.  He does the family laundry and the family grocery shopping.  He takes out the trash.  He spends his day watching television.  He uses the computer and will buy things from Craigslist.  He last bought a microwave.  He does not socialize via the internet.  He does not like Facebook.  He thinks it is odd to have all one's information on the web.  The claimant has a valid driver's license after he had to take the written test four times.  He took public transportation to the hearing because his car stopped working.  He is able to figure out how to get places by public transportation.

Noting the medical findings – specifically those of Drs. White, McClure, and Kemp, discussed above – the ALJ concluded that plaintiff's testimony was not credible to the extent inconsistent with the doctors' findings and resulting residual functional capacity assessment.  The ALJ stated:

> The claimant is not fully credible as to the limiting effects of his impairment.  Although the record indicates the claimant has symptoms consistent with Asperger's disorder, the evidence and medical opinions reveal he is capable of work within the above residual functional capacity.  The record reveals the claimant has difficulty with interpersonal relationships and this has affected his ability to function in the workplace.  Dr. White, the psychological consultative psychologist, opined he was capable of performing simple repetitive tasks and that he had limitations with working with co-workers and supervisors.  The claimant reported difficulty obtaining employment to his primary care provider, Dr. McClure, and that people do not understand him nor he them.  She found no physical or mental condition precluding work.  She did note that he had an "off affect" and even after referring him to a psychiatrist, the psychiatrist found no basis upon which to base a psychiatric disability.  The claimant demonstrated lack of insight and judgment and a qualitative impairment in social interaction but demonstrated logical and coherent thought processes and no significant cognitive impairment.  He reported he did poorly in school but successfully obtained his GED.

> He was thereafter referred to a clinical psychologist [Dr. Kemp] at the Department of Rehabilitation who evaluated the claimant's potential for work. She identified no learning disability. He demonstrated clear strength in math and generally functions in the average to low average range. From a rehabilitation standpoint, she opined he should have a job coach to advise him on appropriate work behavior. She additionally opined the claimant would do best in a job with minimal interaction.
>
> In sum, despite giving great deference to the claimant's subjective allegations, the objective medical evidence including medical opinions, the evidence does not support the allegations as alleged. The record supports that the extent and severity of the claimant's limitations allow the performance of simple repetitive tasks in a non-public setting in an independent separate work area where there is no co-worker interaction and occasional interaction with supervisors.

Plaintiff argues that the "ALJ's rationale is without reason." He cites Dr. White's conclusion that he has severe social impairment, as well as the recommendation by Dr. Kemp of the Department of Rehabilitation that he would benefit from a job coach. These conclusions, however, are not inconsistent with the ALJ's finding that plaintiff's statements as to disabling symptoms are not credible. For example, the existence of a severe social impairment does not necessarily preclude work where, as here, account is made for the impairment by limiting plaintiff to isolated work in a non-public setting with only occasional supervisor contact. Similarly, the court notes that Dr. Kemp ultimately concluded that, despite indications which would lead to a recommendation for a job coach, plaintiff could perform work with minimal interaction, as allowed by the ALJ's residual functional capacity assessment. Additionally, despite reporting an inability to socialize, plaintiff reported that he buys things on Craigslist, an internet "garage sale" which requires social interaction with previously unknown members of the public. Further eroding plaintiff's credibility on the issue of social interaction, despite alleging an inability to get along with others not a single examining doctor reported that plaintiff had any difficulties interacting appropriately with them.

///

///

///

Plaintiff also argues that the ALJ failed to properly account for evidence showing his inability to sustain employment for a significant period of time. This argument is unpersuasive. Despite plaintiff's allegations of a totally disabling "personality problem," he continuously holds himself out as capable of working, as shown by his repeated attempts to seek and hold down steady employment. In this regard, the ALJ noted: "In a Function Report the claimant prepared on October 5, 2010, the claimant said he spends his day . . . looking for work." Plaintiff's allegation of an inability to sustain work is also belied by his statements that he does the family laundry and the family grocery shopping, among other activities of daily living that he performs on a continuos and sustained basis.

Finally, the court rejects plaintiff's apparent argument that the ALJ's credibility finding is flawed because the medical evidence shows that he can perform no more than "sheltered work" under 20 C.F.R. § 404.1573(c). To the extent plaintiff equates the ALJ's limitation to isolated non-public work to "sheltered work," he is incorrect. The regulations define "sheltered work" as work requiring special assistance from others to complete the work, or work where the employee is allowed irregular hours, among just two examples listed in the regulations. See id. Notably, the limitations outlined by the ALJ are not listed in the regulations defining "sheltered work." Moreover, even if Dr. Kemp's recommendation for a job coach were considered, such a recommendation would not qualify because the purpose of the job coach was not to assist plaintiff in completing the work, but was for the purpose of allowing greater public interaction.

**C.    Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100

F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

As to evidence from plaintiff's father, the ALJ stated:

> On October 15, 2010, Jim W. Evans, the claimant's father, prepared a Third Party Statement. He reported that the claimant has the ability to engage in activities of daily living, including caring for his personal hygiene needs and preparing quick meals. He noted the claimant was homeless at the time he filled out the report and stated the claimant could do house or yard work if he had a home. He said the claimant required some encouragement to do such tasks. He stated the claimant is able to go outside alone. He is able to shop and does so daily. He stated he is not able to handle money. He said the claimant likes to listen to music. He confirmed that the claimant does not engage in social activities and that he does not get along with anyone. He said the claimant does not have common sense and "causes arguments a lot." He said the claimant was fired from every job. He stated that he is a good worker but is rude to others and is not aware of his rudeness. He does not handle stress or changes in routine well. (Ex. 6E). The claimant testified that he now lives with his father who has had the opportunity over a lifetime to observe his son. I assign some weight to this opinion.

Plaintiff argues that the ALJ erred by failing to state why the lay witness evidence was only given "some weight."

Technically speaking, plaintiff's argument has merit in that the ALJ should have articulated a reason for assigning Mr. Evans' statement only some weight. Any error, however, is found to be harmless. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see

also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)). In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our

> precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted). Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Because the ALJ erred by failing to provide any reasons for concluding that Mr. Evans' third-party statement was entitled to only "some weight," the court applies the Stout standard and concludes that the error is harmless. It is clear that the testimony from plaintiff and his father was essentially the same with respect to plaintiff's limitations. As discussed above, the court finds no error with respect to the ALJ's rejection of plaintiff's statements as not fully credible. The court also finds in the context of Mr. Evans' lay witness statement that, had reasons been stated, any reasonable ALJ would have rejected the lay witness statement for the same reasons plaintiff's statements were properly rejected. Had that reason been articulated here, no error would have occurred. The failure of the ALJ in this case to include "magic words" linking the two is considered harmless where the connection is made obvious by the very similarity of the statements.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

        2.    Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  October 8, 2014

                                                                **CRAIG M. KELLISON**
                                                                UNITED STATES MAGISTRATE JUDGE